IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 07-607-01 |
| KENNETH KRALL | : | |

**SURRICK, J.**                                                                                                          AUGUST __4__, 2009

## **MEMORANDUM**

Presently before the Court are Defendant Kenneth Krall's Motion for Discovery (Doc. No. 36), the Government's Omnibus Response to Defendant's Motions for an Evidentiary Hearing and for Discovery (Doc. No. 40), Defendant's Motion Requesting that the Government be Ordered to Produce a Confidential Informant Enabling this Court to Determine the Best Mechanism to Protect the Defendant's Due Process Rights (Doc. No. 42), the Government's Response to the Defendant's Motion Requesting that the Government be Ordered to Produce a Confidential Informant (Doc. No. 44), Defendant's Sur Reply to the Government's Response to his Motion Requesting that the Government be Ordered to Produce a Confidential Informant (Doc. No. 46), Defendant's Motion Requesting that the Government be Ordered to Produce for *in Camera* Inspection all Documents in its Custody or Control that are Responsive to the Subpoena Served upon DEA Special Agent David Morina so that the Court can Determine the Best Mechanism to Protect the Defendant's Due Process Rights (Doc. No. 45), the Government's Motion to Quash Defense Subpoenas and Government's Response to Defendant's Motion

Requesting the Court's *in Camera* Inspection of Subpoenaed Documents (Doc. No. 50), and Defendant's *Ex Parte* Offer of Proof in Support of a Frank's Hearing and for an In-Camera Production of Records (Doc. No. 53). For the following reasons, Defendant's Motions will be denied and the Government's Motion will be granted.

## I. BACKGROUND

On September 26, 2007, a grand jury returned an indictment charging Kenneth Krall ("Defendant") with one count of possession with intent to distribute approximately 638 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). (Doc. No. 16.) The charge is based upon evidence seized by DEA agents on August 30, 2007, when they executed a search warrant at Defendant's home at 1255 Friendship Lane, Upper Black Eddy, Pennsylvania. The search warrant was issued based upon the affidavit of DEA Special Agent David Morina. (*See* Doc. No. 45, Ex. 1 at 5-12 (hereinafter, "Morina Aff.").) Agent Morina's affidavit provided, in relevant part, that

> 7. During the course of this investigation, Detective [Michael] Mosiniak [of the Bucks County District Attorney's Office] and I have personally met with and spoken to an individual (hereinafter referred to as the confidential informant or "CI") who has periodically provided information to detectives of the Bucks County District Attorney's Office and agents of the DEA since approximately June 2005. In June 2005, the CI was stopped by law enforcement officers and found to be in possession of a small amount of methamphetamine; subsequent charges were not filed against the CI. Based on our training and experience, we believe the CI to be knowledgeable in the distribution of methamphetamine and marijuana in the Bucks County, Pennsylvania area. In the past, the CI has provided information to Detective Mosiniak and I in relation to other investigations involving the distribution of controlled substances that has been corroborated by other confidential sources, physical surveillances, records maintained by public databases, and other independent investigative methods, including a court-authorized wiretap. No information provided by the CI has been proven to be false. The CI has refused to testify out of concern for the CI's own safety and the safety of others close to the CI.

8. On August 27, 2007, Detective Mosiniak interviewed the CI regarding Kenneth Krall, a/k/a "Gypsy." Thereafter, Detective Mosiniak related the following information to me:

    a. The CI advised that Kenneth Krall (whom the CI also knows as "Gypsy") is a known associate of the Warlocks outlaw motorcycle club and possibly other outlaw motorcycle gangs in the Philadelphia area. The CI stated that at some point in the past, Krall lived with the former president of the Bucks County chapter of the Warlocks, whom the CI knew as "Ajax." According to the CI, "Ajax" had been married to a woman named Brenda Hammerstone but they later separated.

    b. According to the CI, Krall currently resides at 1255 Friendship Lane, in Upper Black Eddy, located in Bucks County, Pennsylvania (the subject premises). The CI stated that in addition to a trailer on the property, which serves as Krall's primary residence, Krall also maintains several shed-like structures on the subject premises, in close proximity to the trailer. According to the CI, there are also numerous cars, in various states of disrepair, located on the property.

    c. The CI advised that on August 26, 2007, the CI went to the subject premises to retrieve a stolen motorcycle part belonging to the CI, which the CI believed was located at the subject premises. According to the CI, the CI went into the subject premise without Krall's knowledge or permission. (It should also be noted that law enforcement agents were not aware of, and in no way directed or encouraged, the CI's entry onto the subject premises on August 26, 2007.) The CI reported that while looking through some items located in the A-frame shed-like structure situated closest to the trailer on the subject premises, the CI observed a metal ammunition container in a white cabinet located to the left of the door of the shed. Inside the metal ammunition container, the CI saw several clear, vacuum-sealed bags containing a substance which the CI believed to be methamphetamine. The CI estimated that these bags contained a total of approximately two (2) pounds of methamphetamine. The CI also observed a metal cash box in the white cabinet. Inside the metal cash box, the CI saw: 1) a bag containing a substance which the CI believed to be a smaller amount of methamphetamine; and 2) multiple packs of U.S. Currency, each wrapped in clear plastic and labeled "$5000," which the CI estimated totaled $50,000.

(Morina Aff. ¶¶ 7-8.) The remainder of the affidavit detailed additional information that the CI provided about prior interactions between the CI and Defendant, as well as information from another cooperating witness ("CW") concerning five occasions in the Spring of 2006 when the CW went to Defendant's residence to purchase methamphetamine and marijuana.

3

On December 15, 2008, Defendant filed the Motion for Discovery.[1] (Doc. No. 36.) On April 28, 2009, Defendant issued subpoenas to Special Agent Morina and Bucks County Detectives Michael Mosiniak and Michael Walp for production of the following documents:

    a.      The Search Warrant Affidavit for the Search Warrant described in ¶ 12 of the Affidavit.

    b.      All documents commonly referred to as DEA 6's prepared from 1990 to the present which refer to Kenneth Krall NADDIS # 4528737.

    c.      Such documents in the custody and control of the government created during the relevant time period [from 1999 to the present], in connection with the investigation(s) as will show:

           i.      any and all communications concerning, pertaining to, or referring to the CI. This request includes any communications pertaining to, or referring to "consideration" to the CI . . . .

           ii.      any and all communications between or among any Law Enforcement Agent and the CI. This request includes any communications pertaining to, or referring to "consideration" to the CI . . . .

           iii.      any and all communications between any Law Enforcement Agent and any attorney representing the CI concerning, pertaining to, or referring to the CI. This request includes any communications pertaining to, or referring to "consideration" to the CI . . . .

           iv.      all offenses the CI disclosed to Law Enforcement Agents whether

---

[1] Defendant's Motion for Discovery requests that we "grant him discovery to enable him to prepare for an evidentiary hearing to determine the admissibility of evidence seized as a result of execution of a search warrant . . . ." (Doc. No. 36, Def.'s Mot. at 1.) Defendant argues that the search warrant affidavit "raises serious questions as to whether on August 26, 2007, when the informant broke into [Defendant's] home, the informant was acting as an agent of law enforcement . . . ." (Doc. No. 36, Def.'s Mem. of Law at 1.) Defendant seeks to compel the Government to produce "all files and documents related to the persons referred to in the search warrant affidavit as the confidential informant and the confidential informant witness, all statements provided by them in connection with their cooperation." (*Id.* at 2.) The Motion for Discovery is essentially the same as Defendant's later motions. Our analysis of those motions applies with equal force to the Motion for Discovery.

>           or not charged.
>
>     v.    all offenses Law Enforcement Agents believe the CI committed
>           whether or not charged.
>
>     vi.   all of the investigations in which the CI provided information to
>           Law Enforcement Agents.

(Doc. No. 50, Ex. A at 5-6.) On May 11, 2009, Defendant filed the Motion Requesting that the Government be Ordered to Produce a Confidential Informant Enabling this Court to Determine the Best Mechanism to Protect the Defendant's Due Process Rights. (Doc. No. 42.) On May 25, 2009, Defendant filed the Motion Requesting that the Government be Ordered to Produce for *in Camera* Inspection all Documents in its Custody or Control that are Responsive to the Subpoena Served Upon DEA Special Agent David Morina so that the Court can Determine the Best Mechanism to Protect the Defendant's Due Process Rights. (Doc. No. 45.) A suppression hearing is scheduled for August 6, 2009. (Doc. No. 52.) Trial is scheduled for August 17, 2009. (*Id.*)

## II.   DISCUSSION

### A.   Defendant's Motion for *in Camera* Review of Documents

Defendant seeks to have the Court review *in camera* all documents in the Government's custody that are responsive to the subpoena issued to Special Agent Morina. (Doc. No. 45 at 1.) Defendant argues that it is likely that these documents contain information supporting his theory that the CI was acting as a government agent when he broke into Defendant's home and that Agent Morina lied or recklessly disregarded the truth when he averred in the search warrant affidavit that the Government had no role in the search. (*Id.* at 6-7.) Defendant seeks this information under the due process principles of *Brady v. Maryland*, 373 U.S. 83 (1963), to

support his suppression arguments and to satisfy his burden under *Franks v. Delaware*, 438 U.S. 154 (1978). (Doc. No. 45 at 4, 6.)

The Government responds that "it is nothing more than pure speculation that the subpoenaed documents and the CI information at issue are helpful to the defense." (Doc. No. 50 at 6.) The Government argues that "[a]bsent some indication of misconduct, the [G]overnment's representations that no favorable information exists should be sufficient, and the Court is not required to conduct an *in camera* review to verify those assertions." (*Id.* at 5.) The Government advises that it is aware of its *Brady* obligations and "has provided [Defendant] with those materials and information to which he is entitled." (*Id.* at 5-6.)

"It is well settled that there is no general constitutional right to discovery in a criminal case although the prosecution has the 'duty under the due process clause to insure that criminal trials are fair by disclosing evidence favorable to the defendant upon request.'" *Diggs v. Owens*, 833 F.2d 439, 443-44 (3d Cir. 1987) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)) (internal quotes omitted). "The suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000). The Supreme Court has directed that

> [i]n the typical case where a defendant makes only a general request for exculpatory material under *Brady v. Maryland* it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final.

*Pennsylvania v. Ritchie*, 480 U.S. 39, 59-60 (1987) (internal citations omitted). "Where a

6

defendant suspects that the government has withheld Brady evidence, he may move the court for an *in camera* inspection of the materials in question." *United States v. Rodriguez*, No. 07-709, 2008 U.S. Dist. LEXIS 93890, at *7-8 (E.D. Pa. Nov. 18, 2008) (citing *Ritchie*, 480 U.S. at 60; *United States v. Dent*, 149 F.3d 180, 191 (3d Cir. 1998)). However, "[a] defendant seeking an in camera inspection to determine whether files contain Brady material must at least make a 'plausible showing' that the inspection will reveal material evidence." *Riley v. Taylor*, 277 F.3d 261, 301 (3d Cir. 2001) (en banc) (quoting *Ritchie*, 480 U.S. at 58 n.15). To make a "plausible showing," "[m]ere speculation is not enough." *Id.*

Defendant argues that "[o]ther than through the subpoenaed documents [Defendant] has no other means" to establish: "(A) That law enforcement agents had been investigating [Defendant] for a period of years, but had never obtained sufficient evidence to support even an arrest; and (B) The nature, extent, and scope of the communications among and between the Law Enforcement Agents and the CI concerning [Defendant]." (Doc. No. 45 at 4 (emphasis omitted).) Defendant argues that "[b]ased upon counsel's experience in dealing with the DEA it is believed and therefore averred that the government has documents responsive to the Subpoena which could be used to confront the witnesses and establish the points he has to establish." (Doc. No. 45 at 3.) In support of his argument that this information is material and that an *in camera* review of the subpoenaed documents will reveal such evidence, Defendant further argues:

> In this instance, it is material to ascertain the factual basis for the CI's motives and intentions when he broke in to the Premises. It is likely that the factual basis is intertwined with the communications between the Law Enforcement Agents and the CI during the two years preceding the break-in when the CI was cooperating with then [sic]. A written record for that factual basis is likely reflected in the subpoenaed documents.

7

(Doc. No. 45 at 10.)

Defendant has made no plausible showing that an *in camera* inspection of the subpoenaed documents would reveal material evidence. Defendant seeks to suppress the methamphetamine that was seized from his house on the authority of a search warrant, which was based upon an affidavit signed by Agent Morina. To suppress the methamphetamine, which Defendant does not dispute that the CI observed in Defendant's house, Defendant needs to invalidate the search warrant by showing that the CI was acting as an instrument of the Government in violation of the Fourth Amendment and that statements to the contrary in the search warrant affidavit were false or made with a reckless disregard for the truth. Defendant has made no showing whatsoever that an *in camera* review of the subpoenaed documents would reveal evidence material to these issues. Defendant merely believes that it is "likely" that the documents contain information helpful to his suppression argument and helpful to satisfying his burden of making a substantial preliminary showing for a *Franks* hearing. Where Defendant's request for an *in camera* review is nothing more than a fishing expedition based on sheer speculation and where the Government has advised the Court and Counsel that it has fully complied with its *Brady* obligations, we will not conduct an *in camera* review of the broad array of investigative documents that Defendant subpoenaed.

B.  **Government Motion to Quash**

Concurrent with its response opposing the motion for *in camera* review, the Government moves to quash the defense subpoenas. (Doc. No. 50.) The Government argues that the subpoenas should be quashed because they "violate several privileges and the Rules of Criminal Procedure, and do not comply with federal regulations governing subpoenas to federal agents

. . . ." (*Id.* at 2.)

Federal Rule of Criminal Procedure 17 governs subpoenas for the attendance of witnesses, as well as the production of documents and objects. *See* Fed. R. Crim. P. 17 (2009). However, a Rule 17(c) subpoena *duces tecum* is "not intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698 (1974); *see also United States v. Cuthbertson*, 651 F.2d 189, 192 (3d Cir. 1981) ("Rule 17(c) was not intended to be a broad discovery device . . . ."). "[M]ore is needed to sustain a subpoena than the defendant's own subjective belief (i.e., hope) that he or she may find something useful by casting a subpoena upon the waters." *United States v. Eisenhart*, 43 Fed. App'x 500, 505 (3d Cir. 2002) (nonprecedential) (citing *Nixon*, 418 U.S. at 698); *see also United States v. Louis*, No. 04-203, 2005 U.S. Dist. LEXIS 1087, at *17 (S.D.N.Y. Jan. 27, 2005) ("The party seeking a subpoena must be able to reasonably specify the information contained or believed to be contained in the documents sought rather than merely hope that something useful will turn up.").

As discussed above, Defendant has made no showing other than a belief or hope that the documents contain useful evidence. Defendant is clearly searching for useful information, not seeking to secure specific admissible evidence. Accordingly, we will grant the Government's Motion to Quash without reaching the Government's arguments concerning privileges and regulations.

C.   **Defendant's Motion to Produce the CI**

In addition to moving for *in camera* review of documents, Defendant requests that the Court hold a *Franks* hearing (Doc. No. 46 at 8) and that the Government be ordered to have the CI available at the time of the suppression hearing (Doc. No. 42 at 1). Defendant wants the CI to

9

be available so that "if this Court decides to question the CI in camera to determine whether the CI possesses information that is relevant, and essential to a fair determination of the Defendant's Motion, it can do so." (*Id.*) Defendant argues that the CI's testimony is relevant to establish that the search warrant affidavit included intentionally or recklessly false statements and that the CI was acting as a government agent when he broke into Defendant's house. (*Id.* at 2-5.)

The Government responds that "[a]s a threshold matter, the defendant has failed to make a preliminary showing of intentionally or recklessly false statements or omissions in the affidavit and is not entitled to a *Franks* hearing on this issue." (Doc. No. 44 at 5.) The Government argues further that "[Defendant's] speculation and hope that disclosure and/or production of the informant will lead to evidence that could help him make a *Franks* showing does not warranted [sic] disclosure and production of the CI." (*Id.*)

        1.      Franks *Hearing*

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that the Fourth Amendment requires that an evidentiary hearing be held to examine the truthfulness of a search warrant affidavit if a defendant first makes a "substantial preliminary showing" that (1) the affidavit contains a material misrepresentation, (2) the affiant made the misrepresentation knowingly and intentionally, or with reckless disregard for the truth, and (3) the allegedly false statement was material to the finding of probable cause. *Id.* at 155-56, 171. Where the defendant asserts that the affiant omitted facts with a reckless disregard for the truth, the defendant can satisfy the substantial preliminary showing standard by demonstrating that the affiant "recklessly omit[ted] facts that any reasonable person would want to know." *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (citing *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000)). Only if

such a showing is made will a defendant be granted an evidentiary hearing on the issue of the affiant's veracity. *Franks*, 438 U.S. at 155-56. The Supreme Court has articulated several factors for courts to consider in determining whether the defendant has established a "substantial preliminary showing" for a *Franks* hearing:

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant.

*Id.* at 171. The requirement of a "substantial preliminary showing" is intended "to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." *Id.* at 170–71. If the defendant makes this preliminary showing but "there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id*. at 171–72. If "the remaining content is insufficient," then the defendant is entitled to a hearing. *Id*. at 172. Finally, only after the substantial preliminary showing of falsity or reckless disregard for the truth has been made should the district court consider whether to "require the revelation of the identify of an informant . . . ." *Id.* at 170; *see also United States v. Rufus Brown*, 3 F.3d 673, 677 (3d Cir. 1993) ("[B]ecause the defendants' offer of proof failed to show that the affiant was untruthful, the district court did not abuse its discretion in refusing to order disclosure of the informant.").[2]

---

[2] In *Brown*, the Third Circuit recognized that

> it is extremely difficult for defendants . . . to make a substantial preliminary showing of a police officer-affiant's perjury or recklessness where the search warrant affidavit

Defendant argues that there are two material misrepresentations in the search warrant affidavit. First, Defendant argues that the following statement is either knowingly or recklessly false: "[L]aw enforcement agents were not aware of and in no way directed or encouraged the CI's entry onto the subject premises on August 26, 2007." (Doc. No. 42 at 5 (quoting Morina Aff. ¶ 8(c)).) Defendant concludes that this statement is an intentional or reckless misrepresentation because "[a]t the time of the CI's break-in he had been cooperating with these Law Enforcement Agents for over two (2) years. It is assumed that in exchange for that cooperation the CI had bargained for some type of consideration . . . . For years prior to and during that two year period [Defendant] had been and was a target of investigations being conducted by these Law Enforcement Agents." (*Id.* at 2 (emphasis omitted).) Defendant argues that

> [t]he Affidavit establishes that while attempting to curry favor with the Law

---

> rests entirely on information allegedly provided by an undisclosed informant. As the Court of Appeals for the Ninth Circuit has stated: "A defendant in [this] situation has a difficult evidentiary problem. To make a substantial preliminary showing, he must establish a negative – that the information does not exist – or uncover the informant's probable identity and the text of his information, despite considerable Government efforts to protect both."

*Brown*, 3 F.3d at 680 n.7 (quoting *United States v. Kiser*, 716 F.2d 1268, 1271-73 (9th Cir. 1983)). Nevertheless, the Third Circuit did not "foreclose the possibility that there may be circumstances in which a request for disclosure of an informant in order to enable the defendant to make a *Franks* showing appropriately may be granted by a district court . . . ." *Id.* However, as the Supreme Court noted in *Roviaro*, most of the federal cases involving the disclosure of an informant's identity because that informant had information that was relevant and helpful to the defense "have arisen where the legality of a search *without a warrant* is in issue and the communications of an informer are claimed to establish probable cause." *Roviaro*, 353 U.S. at 61 (emphasis added). Here, where there is a search warrant and where Defendant has made no showing that any statement in the search warrant affidavit is either recklessly or intentionally false, we will not order the Government to produce the CI in order for Defendant to attempt to satisfy his burden of proof.

> Enforcement Agents the CI engaged in new other criminal conduct making the CI into an active participant and eyewitness. The CI's breaking into the Premises and his observations while rifling through the containers and cabinets places the interpretations he gave to his conversations with the Law Enforcement Agents during the two years he was cooperating with them, and his motives and intentions at center stage in [Defendant's] effort to establish that the CI was assisting law enforcement efforts in connection with the consideration he had bargained for.

(*Id.* at 10.)

We are not persuaded that Defendant has identified an intentional or reckless misrepresentation. Defendant's mere speculative inferences arising from the fact that Defendant has been on the Government's radar for several years and that the CI had received consideration in return for his cooperation, and arising from Defendant's assumption that the CI was "attempting to curry favor" with the DEA, do not satisfy Defendant's burden of making a substantial preliminary showing under *Franks v. Delaware*.[3]

---

[3] In a supplemental filing, Defendant asserts that

> [f]or unknown reasons the day after the break-in [Detectives] Mosiniak and Walp referred this matter to DEA Special Agent Morina. Subsequently, Morina was the Affiant. Mosiniak and Walp told Morina that the CI broke into the Premises "looking for a stolen motorcycle part." There is no information in the Affidavit explaining why even though Morina had an ongoing working relationship with the CI, in connection with determining the CI's motives and intentions surrounding the break-in Morina chose not to speak with the CI.

(Doc. No. 46 at 4-5.) In a previous filing, Defendant noted that "[t]he Affidavit contains no information as to why the Bucks County Detectives turned this case over on a 'silver platter' to the DEA." (Doc. No. 45 at 4.) Defendant appears to be implying that something untoward motivated the detectives' decision to hand the case to Special Agent Morina. Such unsupported allegations cannot form the basis for allowing a *Franks* hearing to go forward.

In a reply brief, Defendant states that "even though [Defendant] believes that his submissions satisfied the *Franks* criteria counsel is ready, willing and able to make a proffer outside of the hearing of Law Enforcement Agents to establish [Defendant's] entitlement to a *Franks* hearing." (Doc. No. 46 at 1.) Three days before the suppression hearing, Defendant has filed an *Ex Parte* Offer of Proof in Support of a Frank's Hearing and for an In-Camera Production of Records. (Doc. No. 53.) Defendant's Offer of Proof does not satisfy his burden

13

Defendant identifies the following as the second misrepresentation: "[O]n August 26, 2007, the CI went to the subject premises to retrieve a stolen motorcycle part belonging to the CI, which the CI believed was located at the subject premises." (*Id.* at 6 (quoting Morina Aff. ¶ 8(c)).)[4] Defendant contends that this statement is intentionally or recklessly false "[i]f the CI was the person whose name was previously disclosed by defense counsel to the government." (*Id.*) Again, this is pure speculation and does not satisfy Defendant's burden of making a substantial preliminary showing under *Franks*. Moreover, the truthfulness of the CI's statement

---

under *Franks* and is not, in fact, an offer of proof at all. Rather, it is speculation built upon speculation. Defendant merely argues, as he does in his previous motions, that the Government has been investigating Defendant for several years, that the CI has cooperated with the Government for two years, and that there is a likelihood that the Government has communicated with the CI about Defendant as part of the cooperation relationship. Defendant attaches some documents, which were not turned over by the Government during discovery, to support his contention that the Bucks County Drug Task Force and the DEA had been investigating Defendant for years. Defendant argues that as a result of this information, "[i]t is reasonable to conclude that since [the law enforcement agents in this case] were actively soliciting and acquiring from other cooperating individuals information incriminatory [of Defendant] that during the two (2) period [sic] of the CI's cooperation, prior to his breaking into the [Defendant's] premises, that they also discussed [Defendant] with either the CI or someone who spoke to the CI." (*Id.* at 6.) Defendant argues that a magistrate judge would want to know whether these facts "impacted on the mind set [sic] of the CI while he was searching [Defendant's] property . . . ." (*Id.* at 6–7.) Defendant also argues that "it was at least reckless, if not an act of deliberate ignorance, for the Affiant to not interview the CI after the Bucks County Detectives disclosed to the Affiant that the CI had broken into [Defendant's] property" so that the Affiant could independently determine "whether (1) the Bucks County Detectives (or for that matter the DEA) knew of and acquiesced in the CI's illegally breaking into [Defendant's] property; and (2) the CI performed the search to assist law enforcement efforts . . . ." (*Id.* at 7.) As explained above, such speculative conclusions do not satisfy Defendant's burden under *Franks*. Accordingly, Defendant's purported Offer of Proof does not change our analysis.

[4] This quotation begins: "The CI advised that . . . ." (Morina Aff. ¶ 8(c).) Defendant does not appear to challenge Agent Morina's averment that the CI did in fact make this statement. Rather, Defendant is presumably contesting the truth of that statement and asserting that Agent Morina repeated the statement knowing, or recklessly disregarding the possibility that, it was false. However, as discussed above, Defendant has made no showing as to why he believes that this is the case.

is not at issue. The Supreme Court in *Franks* instructed that it is the veracity of the affiant that matters, not the untruthfulness of the informant. *See Franks*, 438 U.S. at 171 ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant."); *see also Brown*, 3 F.3d at 677 ("It is well-established that a substantial showing of the *informant's* untruthfulness is not sufficient to warrant a *Franks* hearing. The Supreme Court made it clear in *Franks* that a substantial preliminary showing of intentional or reckless falsity *on the part of the affiant* must be made in order for the defendant to have a right to an evidentiary hearing on the affiant's veracity.") (emphasis in original). Defendant has not made a substantial preliminary showing that Agent Morina or his colleagues Detectives Mosiniak and Walp intentionally or recklessly made false statements of the search warrant affidavit.

Defendant argues that in connection with both statements "there were material omissions that the Magistrate would very likely have wanted to know." (*Id.* at 5.) The only omission that Defendant notes is the following: "[T]he magistrate would has [sic] wanted to know the facts and correct legal standard to be applied in determining whether a private individual was acting as a governmental instrument or agent for Fourth Amendment [sic]." (*Id.* at 5 n.3.) It is not the affiant's job in a search warrant affidavit to articulate legal standards. Rather, the affiant relates facts and circumstances that the affiant believes will establish probable cause, and the magistrate judge reviews those facts in light of the relevant law. Defendant has not identified the facts regarding this issue that Agent Morina allegedly omitted and has not shown that any such facts were omitted recklessly or intentionally.

Accordingly, in the absence of any substantial preliminary showing as required by

*Franks*, we will deny Defendant's request for a *Franks* hearing.

        2.        *Disclosure under* Roviaro

Defendant argues that under *Roviaro v. United States*, 353 U.S. 53 (1957), and Third Circuit case law, district courts must weigh the "conflicting interests in determining when a confidential informant possesses 'highly relevant material' which can be of substantial assistance to a defendant, and then what to do to protect a defendant's due process right." (Doc. No. 42 at 9.) Defendant contends that the evidence that he seeks from the CI is highly relevant and material because, other than through disclosure of the CI, Defendant has no way to establish that the CI was acting as a government agent when he observed methamphetamine in Defendant's house. (*Id.* at 10.)

The Government responds that production and disclosure of the CI is not warranted because "the defendant's mere speculation and hope that disclosure and/or production of the informant will lead to evidence that could help him make a *Franks* showing does not warranted [sic] the disclosure and/or *in camera* production of the CI." (Doc. No. 44 at 9.)

Under *Roviaro*, a district court may order the disclosure of a confidential informant "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause . . . ." 353 U.S. 60-61. However, "[a] defendant who merely hopes (without showing a likelihood) that disclosure will lead to evidence supporting suppression has not shown that disclosure will be 'relevant and helpful to the defense . . . or is essential to a fair determination' of the case . . . ." *Brown*, 3 F.3d at 679 (quoting *Roviaro*, 353 U.S. at 60-61).

Defendant admits that he is requesting that we conduct an *in camera* review in order "to

determine whether the CI possesses information that is relevant" to Defendant's Motions. (Doc. No. 42 at 1.) As described above, Defendant's belief that the CI may have information relevant to establishing that he was acting as a government agent stems only from speculative inferences based on Defendant's understanding that the Government had been investigating Defendant for several years and that the CI has or had a cooperative relationship with the Government. Defendant's mere hope that disclosure of the CI will lead to information helpful to Defendant's suppression argument is not sufficient justification to require the Government to produce the CI either for full disclosure or for an *in camera* examination.

## III.  CONCLUSION

For these reasons, we will deny Defendant's Motions for *in camera* review and for production of the CI and grant the Government's Motion to Quash.

An appropriate Order will follow.

BY THE COURT:

_____
R. Barclay Surrick, J.