IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 07-607-01 |
| KENNETH KRALL : | |

**SURRICK, J.**                                                         **OCTOBER   9  , 2009**

## MEMORANDUM

Presently before the Court is Defendant Kenneth Krall's oral Motion for Reconsideration of our Order denying Defendant's request to conduct an *in camera* examination of a confidential informant. For the following reasons, the oral Motion will be denied, and the request for suppression of evidence seized as a result of the search of Defendant's property on August 30, 2007, will be denied.[1]

## I. BACKGROUND

On September 26, 2007, a grand jury returned an indictment charging Defendant with one count of possession with intent to distribute approximately 638 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). (Doc. No. 16.) The charge is based upon evidence seized by DEA agents on August 30, 2007, when they executed a search warrant at Defendant's home at 1255 Friendship Lane, Upper Black Eddy, Pennsylvania. The search warrant was issued based in part upon information received by law enforcement agents from a confidential informant ("CI"). The CI had entered Defendant's property without Defendant's

---

[1] In his submissions Defendant makes repeated references to his Motion To Suppress. We have reviewed the record and have been unable to locate a formal motion to suppress evidence.

permission in an attempt to recover motorcycle parts that Defendant had stolen from him and that the CI believed were on the property. While on Defendant's property, the CI observed a large quantity of methamphetamine as well as marijuana and drug paraphernalia on the premises.

In a series of motions, Defendant sought discovery related to the affidavit that served as the basis for the search warrant.[2] (Doc. Nos. 36, 42, 45, 46, 53.) The focus of Defendant's motions was establishing that Defendant was entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).[3] We concluded that Defendant had failed to make a substantial preliminary showing that the search warrant affidavit contained material misrepresentations as required by *Franks*, and that Defendant was simply on a fishing expedition. (Doc. No. 54 at 13-14.) Defendant's motions were denied. (*See* Memorandum and Order Dated August 4, 2008, Doc. Nos. 54, 55.)

A suppression hearing was held on August 6, 2009. (*See generally* Hr'g Tr., Aug. 6, 2009.) At the suppression hearing, Defendant adjusted the focus of his argument. Defendant

---

[2] The Motions filed by Defendant included Defendant's Motion For Discovery (Doc. No. 36), Defendant's Motion Requesting That The Government Be Ordered To Produce A Confidential Informant Enabling The Court To Determine The Best Mechanism To Protect Defendant's Due Process Rights (Doc. No. 42), Defendant's Motion Requesting That The Government Be Ordered To Produce For *In Camera* Inspection All Documents In Its Custody Or Control That Are Responsive To The Subpoena Served Upon DEA Special Agent David Morina So That The Court Can Determine The Best Mechanism To Protect The Defendant's Due Process Rights (Doc. No. 45), and Defendant's Ex-Parte Offer of Proof In Support Of Frank's Hearing And An *In-Camera* Production Of Records (Doc. No. 53).

[3] In *Franks,* the Supreme Court held that the Fourth Amendment requires that an evidentiary hearing be held to examine the truthfulness of a search warrant affidavit if the defendant makes a "substantial preliminary showing" that (1) the affidavit contains a material misrepresentation, (2) the affiant made the misrepresentation knowingly and intentionally, or with reckless disregard for the truth, and (3) the allegedly false statement was material to the finding of probable cause. 438 U.S. at 155-56.

argued that the CI was a government agent, and that therefore the search warrant that was prepared based on the CI's information, and the evidence discovered upon execution of the search warrant, were fruit of the poisonous tree under *Wong Sun v. United States*, 371 U.S. 471 (1963). (Hr'g Tr. 74-76, Aug. 6, 2009.) Defense counsel orally moved for reconsideration of our Order denying Defendant's request for an *in camera* examination of the CI, arguing that the only way that he could establish that the CI was a government agent was through examination of the CI. (*Id.* at 4, 86.)

At the suppression hearing, we heard testimony from the following law enforcement officers involved in this investigation: Detective Michael Mosiniak of the Bucks County District Attorney's Office, Detective Michael Walp of the Bucks County District Attorney's Office, and DEA Special Agent David Morina. Detective Mosiniak, Detective Walp, and Agent Morina were credible witnesses.

Detective Mosiniak sought the search warrant for Defendant's property based on information that he received from the CI. The CI advised Detective Mosiniak that he had observed methamphetamine and marijuana on Defendant's property.[4] (*Id.* at 17.) The CI told Mosiniak that he had entered Defendant's property without Defendant's permission to look for motorcycle parts that he believed Defendant had stolen from him. (*Id.* at 17-18.)

The affiant on the search warrant was Agent Morina, who prepared the affidavit based on information provided by Detective Mosiniak and Detective Walp. (*Id.* at 10.) As a result of a

---

[4] In his testimony, Detective Mosiniak referred to the CI as "they" in order to avoid identifying the CI's sex. (Hr'g Tr. 30, Aug. 6, 2009.) For the sake of readability we will use "he" and "him" in the gender-neutral sense to refer to the CI in this opinion. We do so with the caveat that we have no knowledge of the CI's sex.

search of the residence and other buildings on Defendant's property pursuant to the search warrant, over a pound of methamphetamine, a large amount of United States currency, some marijuana, and drug paraphernalia was seized. (*Id.* at 11.)

Detective Mosiniak testified that he had known the CI since the late spring or early summer of 2005, when he apprehended the CI, who was in possession of a small amount of methamphetamine.[5] (*Id.* at 18.) At that time the CI provided Detective Mosiniak with information regarding an investigation that the Bucks County District Attorney's Office was conducting, and the CI subsequently met with Detective Mosiniak and Agent Morina two or three more times for debriefings with regard to that investigation. (*Id.* at 18-19.) Thereafter, between 2005 and 2007, the CI occasionally called Detective Mosiniak just to make contact with him and to let him know that he was no longer using methamphetamine and that he was "staying out of any trouble." (*Id.* at 18-19, 32.) Neither Detective Mosiniak nor the DEA ever proactively used the CI in an investigation, and the CI was not registered as an informant with either the Bucks County District Attorney's Office or the DEA. (*Id.* at 20.) The CI was never paid for his assistance. (*Id.* at 20-21.) Detective Mosiniak never asked the CI why he continued to contact him. (*Id.* at 33.)

Prior to receiving the CI's tip regarding the drugs on Defendant's property, Detective Mosiniak had not had any contact with the CI for "[a]t least a couple of months, if not longer." (*Id.* at 21.) Moreover, the CI did not tell Detective Mosiniak that he intended to enter

---

[5] The CI was never charged with a crime related to this incident. (Hr'g Tr. 21, Aug. 6, 2009.) Detective Mosiniak testified that the first two times he met with the CI, the CI was aware that he could be charged for the incident. However, sometime in 2005, Detective Mosiniak informed the CI that the United States Attorney had decided not to prosecute him. (*Id.* at 32, 35.)

Defendant's property. Agent Morina had spoken to the CI two or three times in 2005. He had not spoken to him between 2005 and 2007 until the day he was preparing the search warrant affidavit. Detective Mosiniak, Detective Walp, and Agent Morina had never instructed the CI to go onto Defendant's property or to investigate Defendant. (*Id.* at 21-22.)[6] Defendant was not under active investigation by the DEA when the CI contacted Detective Mosiniak in August of 2007. (*Id.* at 60.) The CI was never encouraged by the agents to investigate Defendant. (*Id.* at 21-22.)

## II.  DISCUSSION

"The Fourth Amendment protects against unreasonable searches and seizures by Government officials and those private individuals acting as 'instruments or agents' of the Government." *United States v. Jarrett*, 338 F.3d 339, 344 (4th Cir. 2003). The Fourth Amendment does not apply, however, "'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *United States v. Jacobsen*, 466 U.S. 109, 114 (1984) (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)). "Whether a private party is acting as an agent or instrument of the government depends 'on the degree of the Government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances.'" *United States v. Jackson*, 617 F. Supp. 2d 316, 325 (M.D. Pa. 2008) (quoting *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989)). The defendant bears the burden of showing that the private party was acting as an instrument of

---

[6] Detective Walp never had any contact with the CI related to Defendant. Detective Walp's contribution to the search warrant affidavit was his contact with the confidential witness ("CW").

5

the Government. *Id.* (citing *Johnson v. United States*, 971 F. Supp. 862, 867 (D.N.J. 1997); *United States v. Cleaveland*, 38 F.3d 1092, 1093 (9th Cir. 1994); *United States v. Feffer*, 831 F.2d 734, 739 (7th Cir. 1987)).

The Third Circuit has not articulated a standard for determining whether an individual is acting as an agent or instrument of the Government. *Jackson*, 617 F. Supp. 2d at 325. However, eight other Circuit Courts of Appeals have applied the following test or a close variant: (1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends. *Id.*; *see also United States v. Ginglen*, 467 F.3d 1071, 1074 (7th Cir. 2006); *United States v. Alexander*, 447 F.3d 1290, 1295 (10th Cir. 2006); *Jarrett*, 338 F.3d at 344-45 (4th Cir. 2003) (combining the two elements into "one highly pertinent consideration"); *United States v. Steiger*, 318 F.3d 1039, 1045 (11th Cir. 2003); *United States v. Young*, 153 F.3d 1079, 1080 (9th Cir. 1998); *United States v. Jenkins*, 46 F.3d 447, 460 (5th Cir. 1995); *United States v. Malbrough*, 922 F.2d 458, 462 (8th Cir. 1990); *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985) ("First, the police must have instigated, encouraged or participated in the search. Second, the individual must have engaged in the search with the intent of assisting the police in their investigative efforts.") (citations omitted).

The testimony of Detective Mosiniak, Detective Walp, and Agent Morina clearly establishes that the Government did not in any way encourage, assist, or acquiesce in the CI's behavior. The CI was not a registered cooperator and was never paid. (Hr'g Tr. 20-21, Aug. 6, 2009.) He was not investigating Defendant in hopes of obtaining leniency from the Government. Moreover, Defendant was not under active investigation when the CI informed Detective

6

Mosiniak of the drugs that he had found on Defendant's property. (*Id.* at 60.) Neither Detective Mosiniak nor any other law enforcement official had asked the CI to investigate Defendant or to enter into his property. (*Id.* at 21-22.) We are satisfied that the Government had nothing whatsoever to do with the CI entering Defendant's property. The first prong of the government agent test has not been established.

In addition, Defendant has failed to establish the second prong of the government agent test. The second prong provides that the party performing the search must have intended to assist law enforcement efforts in order to be considered a government agent. *Jackson*, 617 F. Supp. 2d at 325. It is not necessary to have an *in camera* examination of the CI to determine what was in his mind when he entered Defendant's property. The CI told Detective Mosiniak why he entered the property without Defendant's permission. He entered Defendant's property to look for motorcycle parts that Defendant had stolen from him. (Hr'g Tr. 17-18, Aug. 6, 2009.) He was on a mission for himself, not law enforcement. There is nothing in this record that even suggests that the CI was attempting to assist law enforcement. He was not acting as a government agent.

## III. CONCLUSION

For these reasons, Defendant Kenneth Krall's oral Motion for Reconsideration is denied, and the request to suppress evidence seized as a result of the search of Defendant's property is also denied.

An appropriate order will follow.

BY THE COURT:

/s/ R. Barclay Surrick
U.S. District Court Judge